# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.C. and J.C.-1**

**No. 17-0810** (Kanawha County 16-JA-155 and 156)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, J.C.-2, by counsel Herbert L. Hively, II, appeals the Circuit Court of Kanawha County's July 27, 2017, order terminating his parental rights to B.C. and J.C.-1[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he failed to successfully complete his post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 17, 2016, the DHHR filed an abuse and neglect petition against petitioner. According to the DHHR, there were four prior referrals for the family with safety plans included. The referrals included allegations that petitioner's home was unsanitary and that he failed to provide the children with necessary food, clothing, and supervision. On March 23, 2016, the circuit court held a preliminary hearing at which a Child Protective Services worker testified that there was an open case regarding petitioner's dirty home. She testified that it had been in "deplorable" condition, but later cleaned somewhat.

On July 14, 2016, the circuit court held an adjudicatory hearing at which petitioner stipulated to the allegations of abuse and neglect set forth in the petition. Specifically, he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner have the same initials, they will be referred to as J.C.-1 and J.C.-2, respectively, throughout this memorandum decision.

1

stipulated that his home was uninhabitable and unclean at the time of the petition's filing. The circuit court granted petitioner a post-adjudicatory improvement period. Additionally, the guardian noted that the children were developmentally delayed and that B.C. was not fully potty-trained at age seven, which continued to be a serious issue.

On October 14, 2016, the circuit court held a review hearing. The DHHR informed the circuit court that petitioner had not sought out services and requested that the parties have additional time to comply with the improvement period. On January 19, 2017, the circuit court held a review hearing. The circuit court found that petitioner's post-adjudicatory improvement period had expired, but allowed the DHHR to continue to provide services.

On March 1, 2017, the circuit court held a dispositional hearing at which the DHHR recommended termination of petitioner's parental rights because the parents failed to obtain suitable housing, provide bedding for the children, and seek housing assistance. A CPS worker testified that when she began working on petitioner's case, the house was littered with garbage and that the floors and windows were dirty. She further testified that the children's bedroom was inappropriate as there was only one twin bed for the two children and the bedding was dirty. Further, according to the DHHR, the parents failed to provide proper discipline regarding the children's behavior and the children were developmentally behind in school. Petitioner testified that he did not neglect his children or think his children were being harmed by having to live in a dirty home. The circuit court continued the dispositional hearing.

In June of 2017, the circuit court concluded the dispositional hearing. According to the DHHR, after the March of 2017 hearing, it offered services to petitioner including parenting, adult life skills, and supervised visitation services. Further, the DHHR reported that the condition of the home had regressed and was again uninhabitable. Additionally, petitioner and the mother had very little interaction with the children at visitations. Petitioner testified that he did not participate in parenting classes because he did not believe providers could teach him anything he did not already know about parenting. He further testified that, because he had nieces and nephews, he knew how to parent his children. The DHHR moved for termination of petitioner's parental rights and argued that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that post-termination visitation should not be granted. The circuit court noted that petitioner made no progress towards maintaining an appropriate home for the children and that visits had not gone well, as the parents failed to properly discipline and interact with the children. The circuit court found that the termination of petitioner's parental rights was in the children's best interests. Ultimately the circuit court terminated petitioner's parental rights in its July 27, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]The mother's parental rights were also terminated. According to the guardian and the DHHR, the children are placed with a relative with a permanency plan of adoption in that home.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding that he did not successfully complete his post-adjudicatory improvement period. Petitioner alleges that he recognized that his dirty house was unsuitable for his children to live in and that he "made some corrections to his house to make it safer for his children." However, we do not find petitioner's argument compelling. Petitioner was granted a six-month post-adjudicatory improvement period and was offered services for nearly six months after the post-adjudicatory improvement period ended. While it is true that petitioner made some improvements to his home, the DHHR established that the condition of the home had regressed by disposition and was again uninhabitable. In addition to the issues with the home, petitioner also failed to show the ability to properly parent and discipline his children. Petitioner refused to participate in parenting classes because he did not believe that he could learn anything he did not already know. Based on this evidence, the circuit court did not err in finding that petitioner failed to successfully complete his post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights. Petitioner asserts that his parental rights were terminated without an "opportunity to address parental shortcomings." We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

We have also held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

3

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Although petitioner argues that he was denied an opportunity to address his parental shortcomings, he was granted a six-month post-adjudicatory improvement period and offered services for nearly six additional months until the dispositional hearing. Despite being given an improvement period, petitioner refused to acknowledge his failure to properly parent his children and refused to participate in parenting classes. Further, petitioner failed to obtain suitable housing, despite services offered to assist him in doing so. Based on this evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon such findings. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker